**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2934
_____

MARTIN RUGAMBA,
                    Appellant

v.

CRST INC; BROCK FERRY; LARRY YEO; JOSH B.;
2 DMV UNKNOWN EMPLOYEES OF CEDAR RAPIDS, IA;
CRST MANAGER OF CARLISLE YORK PENNSYLVANIA;
SUPERVISOR OF CRST SHOP CARLISLE PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-20-cv-00116)
District Judge:  Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 22, 2021

Before:  MCKEE, SHWARTZ and RESTREPO, Circuit Judges

(Opinion filed: February 2, 2022)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1

Appellant Martin Rugamba filed a complaint alleging a First Amendment violation, wrongful termination, and negligence against his employer, several supervisors, and 2 unidentified employees of the Department of Motor Vehicles ("DMV") in Iowa based on a variety of issues he faced while working as a truck driver.[1] Rugamba alleged that, during his commercial drivers license test, the DMV defendants "broke into" his computer and made the test "disappear from [his] screen." His license was downgraded as a result.

Rugamba then claimed that his supervisors engaged in various "schemes" and "pernicious acts." According to the complaint, the supervisors caused Rugamba to go long periods of time without work assignments. He claimed that he made $2800 over 5 months, which was "too little for someone who was available . . . everyday." The supervisors then allegedly attempted to make Rugamba "responsible for the damages caused by others on trucks." Specifically, they asked him to drive a tractor with a "cracked windshield, collapsing steering column, and no registration," but Rugamba declined. He also claimed that the supervisors instructed a repair shop to disable the "opt-idle engine management system, which regulates heat," in an attempt to "bring about [his] demise by freezing to death." His supervisors also "disrupt[ed] his deliveries" in various ways. He did not expressly indicate in his complaint if he was terminated or if

---

[1] Rugamba's original complaint was deficient in many ways, and the District Court allowed him to file an amended complaint to fix those deficiencies. After the Magistrate Judge recommended dismissing the first amended complaint, Rugamba filed a second amended complaint instead of objections. The District Court deemed the second amended complaint operative, and we derive the facts from that filing.

he resigned, but stated that he "came to the conclusion that a reasonable driver would have quit long ago" and that he told his supervisors that he was "returning the tractor to the HQ."

The District Court sua sponte dismissed the complaint after screening under 28 U.S.C. § 1915(e)(2). The District Court noted that Rugamba had failed to state a claim with respect to the First Amendment because no constitutional rights were violated. It dismissed the wrongful termination claim because Rugamba did not allege that he was ever actually terminated by his employer, and it dismissed the negligence claims because there were simply insufficient facts to support a negligence claim. Rugamba timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291.[2] We review the District Court's dismissal under the same de novo standard of review that we apply to our review of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff, Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012), and we

---

[2] The District Court's jurisdiction was based on diversity under 28 U.S.C. § 1332. As the District Court explained, Rugamba is domiciled in New York and the defendants are domiciled in Pennsylvania or Iowa, and the amount in controversy exceeds $75,000.

construe Rugamba's pro se complaint liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

On appeal, Rugamba expressly abandoned his First Amendment claim and challenges only the District Court's dismissal of his wrongful termination and negligence claims. Under Pennsylvania law, there is no common law cause of action for wrongful termination unless such termination is prohibited by public policy, contract, or statutory provision. Gillispie v. RegionalCare Hosp. Partners Inc., 892 F.3d 585, 597 (3d Cir. 2018). Rugamba's claim fails because he did not allege that he was terminated from his job nor was he "constructively discharged."[3] In order to state a claim based on a "constructive discharge," Rugamba had to allege that his "employer ma[de] working conditions so intolerable that [he was] forced to resign." Kroen v. Bedway Sec. Agency, Inc., 633 A.2d 628, 633-34 (Pa. Super. Ct. 1993). Rugamba's complaints, including that he received too few assignments and was once asked to drive a substandard vehicle (but was relieved after bringing the matter to his supervisors' attention), would not force a reasonable worker to resign. See DiFiore v. CSL Behring, LLC, 879 F.3d 71, 79 (3d Cir. 2018) ("[He] may have been subjected to difficult or unpleasant working conditions, but these conditions fall well short of unbearable."). And, to the extent that he claimed his supervisors instructed a repair shop to disable the heating system in his vehicle in an

---

[3] Rugamba did not state clearly in his complaint that he was fired or that he resigned, but he did make references to leaving his truck at headquarters and taking a bus to New York. In his appellate brief, he stated that he tendered a letter about working conditions to his supervisor, gave the keys to his vehicle back to his supervisor, and subsequently took a bus to New York. Because it is unclear whether this was a resignation, we will treat it as such and evaluate his "constructive discharge" claim.

4

effort to kill him, his claim is conclusory and so devoid of factual matter that it does not reach the plausibility threshold. See Iqbal, 556 U.S. at 678.

Rugamba's negligence claim also fails. To state a negligence claim under Pennsylvania law, he had to allege "(1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1366 (3d Cir. 1993) (internal citation omitted). Though Rugamba claims that his employer violated a duty to inspect his vehicle and keep it in safe running condition, he did not suffer an actual injury based on the alleged misconduct. While his working conditions may have been frustrating at times, we can elicit no facts from the complaint that would support a negligence claim. As the District Court explained, the doctrine of res ipsa loquitor is inapplicable. See Fessenden v. Robert Packer Hosp., 97 A.3d 1225, 1230 (Pa. Super. Ct. 2014). And, despite Rugamba's arguments, even if the facts supported a finding of negligence per se, he has not alleged a requisite actionable injury. See Cabiroy v. Scipione, 767 A.2d 1078, 1079 (Pa. Super. Ct. 2001) ("The concept of negligence per se establishes both duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm.") Accordingly, we will affirm the judgment of the District Court.[4]

---

[4] We agree with the District Court that Rugamba need not have been given another opportunity to amend his complaint in light of the two amendments he has already made.